UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

BRADLEY STROUD,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

CIVIL ACTION NO. 4:24-CV-00610

(SAPORITO, J.)

## MEMORANDUM

This Federal Tort Claims Act ("FTCA") matter is before the court on the motion for summary judgment (Doc. 22) filed by the United States of America. The matter stems from the plaintiff's claim for negligence against the government concerning a motor vehicle accident between the plaintiff and a United States employee. (Doc. 1). The motion has been briefed by the parties (Doc. 25; Doc. 26; Doc. 27; Doc. 28; Doc. 29; Doc. 30; Doc. 31) and it is now ripe for review.

## I. Background[1]

On December 8, 2022, Megan Gorsline, an employee of the United States Postal Service (USPS), was operating her USPS Long Life Vehicle

---

[1] The facts are taken from the United States' "Statement of Material Facts" (Doc. 25) and admitted by the plaintiff. (Doc. 29).

at the intersection of Church Street and Frederick Street in Athens, Pennsylvania. It was a clear and sunny day without any precipitation. Ms. Gorsline was performing a USPS auxiliary route to assist another route that had fallen behind, and she typically traveled on Frederick Street in the area of the intersection with Church Street about two to three times per week. On the date of the accident, Ms. Gorsline had been traveling west on Frederick Street before reaching a stop sign at the intersection of Frederick Street and Church Street. Ms. Gorsline came to a complete stop at the stop sign. A two-way stop sign is located on Frederick Street traveling east to west at the intersection of Frederick Street and Church Street; no stop sign exists heading north and south on Church Street.

On the same date, the plaintiff was operating his ZX6R motorcycle in the vicinity of the intersection of Frederick Street and Church Street. The speed limit on Church Street near the intersection with Frederick Street is twenty-five (25) miles per hour.  The plaintiff was traveling in the direction of his house because his daughter's mother was waiting for him at that location. At some point, he turned onto Church Street and began to approach the intersection with Frederick Street.

After coming to a complete stop, Ms. Gorsline looked right, left, and right again before proceeding through the intersection. Despite looking down Church Street, Ms. Gorsline did not see or hear the plaintiff's motorcycle prior to entering the intersection. After passing through the halfway point of the intersection, Ms. Gorsline saw something in her peripheral vision and heard a loud noise approaching her vehicle. She then felt an impact on the left side of her vehicle which caused her vehicle to go up on two wheels. After exiting the vehicle, Ms. Gorsline observed that the plaintiff's motorcycle had struck her USPS vehicle at the midway point immediately before the back left tire.

From the plaintiff's perspective, the plaintiff was traveling on Church Street and approaching the intersection with Frederick Street at an estimated forty (40) to forty-five (45) miles per hour. The plaintiff observed the USPS truck at the stop sign of Church Street and Frederick Street and attempted to make eye contact with the USPS driver to get her attention. The plaintiff, however, was unsuccessful. As the USPS truck proceeded into the intersection, the plaintiff, continuing to travel down Church Street, hit his brakes to avoid hitting the USPS truck, but collided with the side of the truck near the front of the rear tire on the

left-hand side of the vehicle.

At some point, police officers from the Athens Borough Police Department arrived on the scene of the accident and investigated the crash. Following the investigation, the officers issued the plaintiff traffic citations for the following violations of the Pennsylvania Vehicle and Traffic Law: (1) Driving Vehicle at Safe Speed in violation of Title 75 Pa. C.S.A. Vehicles § 3361; (2) Careless Driving in violation of Title 75 Pa. C.S.C. Vehicles § 3714; (3) Improper Classification of License in violation of Title 75 Pa. C.S.A. Vehicles § 1504; (4) Operation of a Motor Vehicle Without Valid Inspection in violation of Title 75 Pa. C.S.A. Vehicles § 4703; (5) Operation of a Motor Vehicle Without Required Financial Responsibility in violation of Title 75 Pa. C.S.A. Vehicles § 1786; and (6) Driving an Unregistered Vehicle in violation of Title 75 Pa. C.S.A. Vehicles § 1301. The plaintiff was subsequently found guilty of each traffic violation. Ms. Gorsline, however, was never issued a traffic citation.

In support of its motion for summary judgment, the government has also introduced the testimony of two witnesses. First, the United States cites the testimony of Tiffany Derrig, who has lived at the corner

of the intersection of Frederick Street and Church Street for approximately eleven years. Ms. Derrig testified that she could observe the intersection of Frederick Street and Church Street from her residence, and on the date of the accident, she was in her kitchen with a clear view of the intersection. She testified that she observed the USPS truck stopped at the stop sign located at the intersection of Frederick Street and Church Street, and that when she turned away to complete tasks in the kitchen, she heard a motorcycle going very fast followed by the sound of a collision. When she turned around, she testified that she saw the USPS truck and the motorcycle had collided in the middle of the intersection at Frederick Street and Church Street.

Second, the government introduced the testimony of Ms. Derrig's son, Timothy Derrig, who was working in the yard at his residence at the time of the accident. Mr. Derrig testified that he had an unobstructed view of the intersection of Frederick Street and Church Street, and that he observed a USPS truck stopped at a stop sign at the intersection with its driver looking both ways before pulling into the intersection. Mr. Derrig further testified that as the USPS truck pulled into the intersection, he heard a motorcycle driving at an alarming speed towards

the intersection. He stated that the motorcycle then hit the USPS truck on the back quarter of the truck. At his deposition, Mr. Derrig estimated that the motorcycle was traveling at a speed of forty-five to fifty miles per hour.

## II.    Legal Standard

Rule 56 of the Federal Rules of Civil Procedure dictates summary judgment should only be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

Parties seeking summary judgment bear "the initial responsibility of informing the district court of the basis for its motion," and

demonstrating the absence of a genuine dispute of material fact. *Celotext Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251–52. A court must first determine if the moving party has made *prima facie* showing that it is entitled to summary judgment when evaluating such a motion. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. Only once that *prima facie* showing has been made does the burden shift to the nonmoving party to demonstrate the existence of a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331.

Parties may cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers or other materials." Fed. R. Civ. P. 56(c)(1)(A). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P.

56(c)(4). "Although evidence may be considered in a form which is inadmissible at trial, the content of the evidence must be capable of admission at trial." *Bender v. Norfolk S. Corp.*, 994 F. Supp. 2d 593, 599 (M.D. Pa. 2014); *see also Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387 n.13 (3d Cir. 1999) (noting that it is not proper, on summary judgment, to consider evidence that is not admissible at trial).

## III.  Discussion

The Federal Tort Claims Act ("FTCA") waives the United States' sovereign immunity by granting federal district courts jurisdiction over certain claims that are:

> [A]gainst the United States, for money damages …. For injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). The United States is liable under the FTCA "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Therefore, "[t]he cause of action … must come from state tort law." *CNA v. United States*, 535 F.3d 132, 141 (3d Cir. 2008) (citing *F.D.I.C. v. Meyer*, 510 U.S. 417, 478 (1994)).

Here, the plaintiff brings a cause of action for negligence against the United States. A claim for negligence under Pennsylvania law contains four elements: "(1) a duty or obligation recognized by the law … (2) a failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting in harm to the interests of another." *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 139 (3d Cir. 2005). To recover under a negligence claim in Pennsylvania, a plaintiff "must establish that a particular defendant's negligence was the proximate cause of her injuries." *Skipworth by Williams v. Lead Indus. Ass'n Inc.*, 547 690 A.2d 169, 172 (Pa. 1997); *Cuthbert v. City of Philadelphia*, 209 A.2d 261, 263 (Pa. 1965) (finding that proximate causation is the "vitally important link" necessary to impose tort liability.).

The Commonwealth of Pennsylvania "uses a modified comparative negligence approach, permitting the plaintiff to recover damages proportionate to the defendant's negligence so long as she was not more than 50% negligent." *Knight v. Avco Corp.*, No. 4:21-CV-00702, 2025 WL 2677533, at *4 (M.D. Pa. Sept. 18, 2025) (citing 42 Pa. Cons. Stat. § 7102); *Marks v. Redner's Warehouse Markets*, 136 A.3d 984, 988–89 (Pa. Super

Ct. 2016) ("Pennsylvania's comparative negligence statute, 42 Pa.C.S. § 7102, reflects Pennsylvania's policy of providing plaintiffs with a right to at least a partial recovery when they are found 50% or less negligent."). However, "[c]omparative negligence is ordinarily an issue for the jury; it is a 'rare situation where it can be said that the plaintiff is more than 50% negligent as a matter of law.'" *Bouchard v. CSX Transp., Inc.*, 196 F. App'x 65, 70 (3d Cir. 2006) (quoting *Gilbert v. Consol. Rail Corp.*, 623 A.2d 873, 876 (1993)). "Therefore, summary judgment may only be granted where 'facts so clearly reveal the plaintiff's negligence [such] that reasonable minds could not disagree as to its existence.'" *Davidson v. Peggs Co., Inc.*, No. CV 20-1641, 2022 WL 3867908, at *7 (W.D. Pa. Aug. 30, 2022) (quoting *Bennett v. Dollar Gen., Inc.*, Civ. A. 19-03214, 2020 WL 3934971, at *5 (E.D. Pa. July 13, 2020)).

Here, the United States argues that this action constitutes one of the rare instances in which summary judgment is warranted because "it cannot be disputed that [the plaintiff] was the actual cause of the motor vehicle collision on December 8, 2022[.]" (Doc. 26, at 20). First, the government cites the plaintiff's own testimony that he was driving at least fifteen miles per hour over the posted speed limit of twenty-five

miles per hour in support of its contention. (*Id.*, at 20). The government has further supplemented that testimony with the testimony of Ms. Gorsline and her son, Mr. Derrig, who estimated that the plaintiff may have been going at least twenty miles per hour over the posted speed limit. (*Id.*, at 20–21). Second, the government cites the testimony of Ms. Gorsline, Ms. Derrig, and Mr. Derrig, who all confirm that Ms. Gorsline stopped at the stop sign and looked both ways before proceeding into the intersection. (*Id.*, at 21). Ms. Gorsline testified that she did not see the plaintiff approaching on his vehicle when she looked both ways. Third, the government notes that the plaintiff was found guilty of six violations due to his role in the accident, including speeding and careless driving. (*Id.*). Therefore, the United States concludes that the record adequately proves that the plaintiff, not Ms. Gorsline, caused the accident, and at a minimum, surpasses the 50% negligence bar for comparative negligence. (*Id.*, at 17).

But we note that at this stage, all inferences "should be drawn in the light most favorable to the non-moving party," *Pastore*, 24 F.3d at 512, and applying that standard, we find there remain genuine issues of material fact precluding us from granting summary judgment at this

stage. While the government argues that its evidence proves conclusively that the plaintiff caused the accident, that evidence is only probative, not dispositive, of how much negligence is assigned to the plaintiff, if any at all. Indeed, while the government's interpretation of the accident may prove correct, an equally plausible conclusion is that Ms. Gorsline stopped for too long at the stop sign, allowing the plaintiff time to turn onto and travel up the street towards the subject intersection, as the plaintiff argues. (Doc. 30, at 8). Therefore, a fact finder could reasonably conclude that Ms. Gorsline had ample time to proceed before the plaintiff reached the intersection and did not do so, or that Ms. Gorsline failed to properly observe and assess the roadway before the accident. That determination, however, is better left for a jury, not the Court, and therefore, the granting of summary judgment is not warranted in this case.

## IV.   Conclusion

For the foregoing reasons, the government's motion for summary judgment will be denied.

An appropriate order follows.


Dated: June 12, 2026                    *s/Joseph F. Saporito, Jr.*
                                         JOSEPH F. SAPORITO, JR.
                                         United States District Judge